Joseph A. KELLEY, Administrator of the Estate of William D. Feit, Jr., Deceased, Appellant–Plaintiff,

v.

Jagdish PATEL, Jayandra Patel, d/b/a/ Economy Inn and Indiana Insurance, Appellees–Defendants.

No. 79A02–1010–CT–1212.

Court of Appeals of Indiana.

Aug. 9, 2011.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Michael W. Phelps, Nunn Law Office, Bloomington, IN, Attorneys for Appellant.

Rick D. Meils, John W. Mervilde, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorneys for Appellees.

## OPINION

ROBB, Chief Judge.

*Case Summary and Issue*

After the death of William D. Feit, Jr. as a result of a motel fire, Joseph A. Kelley, the administrator of Feit's estate (the "Estate") filed suit against the motel's owners and the motel's liability insurer, Indiana Insurance Company. The Estate appeals the trial court's entry of summary judgment in favor of Indiana Insurance on the Estate's claim of spoliation of evidence. The Estate raises one issue on appeal, which we restate as whether the Estate has an available third-party cause of action against Indiana Insurance for spoliation of evidence. Concluding that a cause of action is not available under the facts of this case, we affirm.

*Facts and Procedural History* [1]

On January 28, 2006, a fire broke out in Feit's room at the Economy Inn (the "Inn") in Lafayette, Indiana. The Inn was owned and operated by Jagdish Patel ("Mr. Patel") and Jayandra Patel (together the "Patels"), and its liability insurance was provided by Indiana Insurance.

Members of the Lafayette Fire Department responded to the fire scene. Firefighter Randy Keen observed on the interior wall of the room the "remnants of a circle . . . where the smoke detector would have been located" but did not find a smoke detector. Appellant's Appendix to Brief at 49. None of the responders found a smoke detector or the remains of a smoke detector inside the room, and no one heard a smoke detector sound, despite smoke billowing from the room. Keen found no evidence of an electrical malfunction in the room and no indication of flammable liquids or accelerants. Keen noted that by the time the firefighters arrived, electricity to the room had been shut off.

Mr. Patel did not see a smoke detector in the room that day but later testified that one had been installed and was hard-wired. The handyman responsible for inspecting smoke detectors at the Inn testified they do not have a battery backup. However, another employee of the Inn believed the smoke detector in Feit's room was battery-powered and that only some other rooms which had been remodeled had hard-wired smoke detectors. Mr. Patel was unaware of any indication Feit had tampered with a smoke detector.

One or two days after the fire, Daryl Gordon, an investigator hired by Indiana Insurance, examined the scene and took photographs. He was accompanied by Dean Criss, Indiana Insurance's claims adjustor. Gordon noted the presence of a television, a refrigerator, a lamp, and a VCR/DVD player in the area of greatest fire damage. Gordon was unable to determine the cause or point of origin of the fire. He did rule out the room's structural electrical wiring but could not rule out appliance wiring as a possible cause. Gordon took and retained a sample of carpet from the room, to which remnants of electrical cord had fused.

Three days after the fire, Feit's father, Quirin Feit ("Quirin"), went to the Inn to retrieve his son's personal belongings and was given access to the room. Quirin retrieved Feit's "souvenirs, personal aspects [sic], backpacks, tools, [and] Boots for work," listing these items in a handwritten statement made at the time.[2] *Id.* at 51.

---

1. We heard oral argument on July 18, 2011, and thank counsel for their presentations.

2. Quirin testified in his deposition that he did not give permission for remaining items to be

Four weeks after Gordon's initial investigation, Gordon returned and found that all the appliances had been removed from the room. He later testified he did not know where the appliances went or why they were taken. Criss testified he did not know what happened to the appliances and that he did not give the Patels any instructions regarding what to do with the appliances.

At some later point not clear from the record, the Inn's handyman "gutted" the wall paneling, wallpaper, and carpet in the room and discarded them in a dumpster. *Id.* at 101. The floor and walls were laid bare down to the drywall.

The Estate's expert, George Van Doren, reviewed various investigation materials and later opined that the appliances and power cords "should have been looked at" and would need to be physically examined in order to determine the cause of the fire. *Id.* at 59. It was Van Doren's understanding that the television and refrigerator had been property of the Inn and a microwave and DVD player in the room had belonged to Feit.[3]

On March 22, 2006, the Estate filed its complaint against the Patels for Feit's wrongful death, alleging negligence with respect to the smoke detector and the Inn's electrical system. In May 2007, the Estate amended its complaint to assert a cause of action against Indiana Insurance for spoliation of evidence. Specifically, the Estate alleged Indiana Insurance "permitted and/or authorized the [Patels] to commit spoliation [of] evidence by discarding all appliances and furniture located in the room and by authorizing [the Patels] to completely gut and remodel the subject hotel room." *Id.* at 23. The complaint also alleged Indiana Insurance "committed spoliation of evidence by failing to preserve the fire scene for the [Estate]'s investigators and by destroying all appliances and furniture within the subject hotel room and by allowing [the Patels] to completely gut and remodel the room prior to any investigation by [the Estate]'s investigators." *Id.* The Estate claimed it was damaged by being "prevented from making an accurate determination of the points of origin and/or the cause of the subject fire" and requested an award of wrongful death damages "if the trier of fact is unable to assess fault against [the Patels] due to the destruction and spoliation of all of the evidence." *Id.* at 24. Neither the original nor the amended complaint asserted a cause of action against the Patels for spoliation of evidence.[4]

The Patels and Indiana Insurance sought summary judgment. Following a hearing, the trial court granted summary judgment in favor of Indiana Insurance and denied summary judgment to the Patels. In a subsequent order, the trial court certified its summary judgment as a final

---

discarded, and that the sentence "[e]verything else can be thrown away and discarded" was added to his statement after he signed it. Appellant's App. at 76.

3. Feit was a long-term resident of the Inn, so it is reasonable to infer that he kept most of his personal belongings in the room.

4. Accordingly, the trial court's grant of summary judgment "as to the issue of spoliation" applies only to Indiana Insurance and is not a partial summary judgment in favor of the Patels. Appellant's App. at 13. The Estate acknowledged in its response to the Patels' and Indiana Insurance's motion for summary judgment that existing precedent precludes the Estate from asserting against the Patels a cause of action for spoliation separate from its tort claim against them. *Id.* at 83; *see Gribben v. Wal–Mart Stores, Inc.,* 824 N.E.2d 349, 355 (Ind.2005) (holding that Indiana does not recognize first-party spoliation of evidence—spoliation by a party to the principal litigation—as an independent tort).

judgment in favor of Indiana Insurance. The Estate now appeals.

### Discussion and Decision

### I. Standard of Review

We review a trial court's summary judgment order de novo. *Kovach v. Caligor Midwest,* 913 N.E.2d 193, 196 (Ind.2009). We apply the same standard as the trial court: whether the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 39 (Ind. 2002). In making this determination, we construe all facts and reasonable inferences therefrom in a light most favorable to the nonmovant. *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 695 (Ind. 2000). Our review of a summary judgment motion is limited to those materials designated by the parties to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind. 2001). We will affirm the trial court's grant of summary judgment if it is sustainable upon any theory supported by the designated materials. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *trans. denied.*

### II. Duty to Preserve Evidence

The parties focus their arguments on the legal issue of whether Indiana Insurance had a duty to the Estate to preserve evidence in the motel room after Indiana Insurance completed its investigation of the fatal fire. The Estate argues that Indiana Insurance had such a duty and that a reasonable trier of fact could find the duty was breached when Indiana Insurance allowed its insured, the Patels, to dispose of everything in the room. At oral argument, the Estate framed its claim more particularly as an omission: that Indiana Insurance failed to advise the Patels that the evidence should be preserved. Indiana Insurance responds that third-party claims for spoliation of evidence as an independent tort are available only in narrow, limited circumstances and that Indiana caselaw has declined to extend its availability to the facts this case presents.

Initially we note the designated evidence provides no clear answer as to whether any smoke detector in Feit's room at the Inn was recovered and, if recovered, whether it has been preserved or despoiled. We therefore neither accept nor reject the premise that Indiana Insurance allowed spoliation of the smoke detector.[5] Regarding the electrical appliances in the room, we construe the evidence favorably to the Estate as the non-moving party to allow an inference that several appliances that were property of the Inn were destroyed or otherwise disposed of after Indiana Insurance completed its investigation. As part of that investigation, Indiana Insurance's investigator and claims adjustor went to the scene and saw the appliances. As a fatality had occurred and no cause of the fire was determined, Indiana Insurance was on notice of the importance of the appliances as evidence in foreseeable litigation, yet it took no steps to preserve the appliances or the state of the room for further investigation. With these factual observations in mind, we turn to the parties' legal arguments, namely whether Indiana Insurance had an affirmative duty to the Estate to preserve evidence under these circumstances and if a cause of action is otherwise available.

In *Gribben v. Wal–Mart Stores, Inc.,* 824 N.E.2d 349, 355 (Ind.2005), our su-

---

5. As support for its proposition that a smoke detector was recovered and preserved, Indiana Insurance refers us to pages of deposition that were not designated by either party to the trial court. We disregard such materials that were not designated below.

preme court held that Indiana does not recognize the tort of first-party spoliation of evidence, that is, spoliation committed by a party to the principal litigation. Surveying the divergent positions taken by other jurisdictions, the court noted that while spoliation is uniformly condemned as contrary to truth and justice, a number of jurisdictions considering the question had rejected first-party spoliation as an independent tort. *Id.* at 353–54. Our supreme court identified a number of policy problems inherent in spoliation as an independent tort: the uncertainty of harm, the speculative character of damages, the burden of duplicative litigation, and the societal costs of requiring persons to take extraordinary measures to preserve documents and things solely to avoid future spoliation litigation. *Id.* at 354–55. Regarding third-party spoliation, the court stated "[i]t may well be that the fairness and integrity of outcome and the deterrence of evidence destruction may require an additional tort remedy when evidence is destroyed or impaired by persons that are not parties to litigation and thus not subject to existing remedies and deterrence," [6] yet the court reserved that issue because it was not presented in *Gribben. Id.* at 355.

Our supreme court addressed the tort of third-party spoliation in *Glotzbach v. Froman,* 854 N.E.2d 337 (Ind.2006). The court discussed *Murphy v. Target Products,* 580 N.E.2d 687 (Ind.Ct.App.1991), and approved our holding in that case that "in the absence of an independent tort, contract, agreement, or special relation-ship imposing a duty to the particular claimant," a cause of action for negligent or intentional spoliation of evidence "is not and ought not be recognized in Indiana." *Glotzbach,* 854 N.E.2d at 339 (quoting *Murphy,* 580 N.E.2d at 690). The *Glotzbach* court also discussed and distinguished *Thompson v. Owensby,* 704 N.E.2d 134 (Ind.Ct.App.1998), *trans. denied,* where we permitted a plaintiff's independent claim against the defendant's liability insurer for failing to preserve evidence that the insurer had collected after litigation had commenced. *Glotzbach,* 854 N.E.2d at 339 (citing *Thompson,* 704 N.E.2d at 137). *Thompson* had reasoned that "the relationship between the carrier and a third party claimant could warrant recognition of a duty if the carrier knew or should have known of the likelihood of litigation and of the claimant's need for the evidence in the litigation," 704 N.E.2d at 137, and that "if an insurance carrier's investigator deems certain evidence important enough to be collected, it is foreseeable that loss of the evidence would interfere with a claimant's ability to prove the underlying claim." *Id.* at 138; *see also id.* at 137 (observing that "[l]iability insurance carriers are no strangers to litigation, and it strains credulity to posit … that a liability carrier could be unaware of the potential importance of physical evidence").

As to policy concerns, *Thompson* reasoned that "[a] liability insurance carrier would be hard-pressed to conduct business without some mechanism for collecting and preserving evidence" and that "[w]hen …

---

**6.** "It is well-established in Indiana law that intentional first-party spoliation of evidence may be used to establish an inference that the spoliated evidence was unfavorable to the party responsible." *Gribben,* 824 N.E.2d at 351. Our Trial Rules allow trial courts to respond to discovery violations with sanctions including that designated facts be taken as established, prohibiting the introduction of evidence, dismissal of part or all of an action, rendering a default judgment against the disobedient party, and ordering payment of reasonable expenses including attorney fees. *Id.* (citing Ind. Trial Rule 37(B)). In addition, the destruction or concealment of evidence may be prosecuted as a felony for obstruction of justice. *Id.* (citing Ind.Code § 35–44–3–4).

the carrier is in a better position than the lay claimant to understand the significance of evidence and the need to maintain it, the carrier can validly be held to a duty to maintain the evidence." *Id.* However, in *Glotzbach,* our supreme court reasoned that the policy disadvantages inherent in first-party spoliation claims remain disadvantages as to third-party claims, and that while evidentiary inferences do not remedy third-party spoliation, many of the other remedies remain applicable. 854 N.E.2d at 341. Ultimately the *Glotzbach* court held that an employee whose injuries are covered by worker's compensation "has no claim against the employer for spoliation of evidence related to that incident." *Id.* at 337.

We revisited the availability of third-party spoliation claims against liability insurers in *Am. Nat'l Prop. & Cas. Co. v. Wilmoth,* 893 N.E.2d 1068 (Ind.Ct.App. 2008), *trans. denied.* Distinguishing *Thompson,* we concluded that the third-party insurer had no duty to the claimant to preserve evidence "when no lawsuit had been filed, when the relevance of the evidence could not have been anticipated, and when [the insurer] never had possession of the evidence." *Id.* at 1074.

Turning to the facts of the present case, *Thompson* is distinguishable because the missing evidence was in the possession of the Patels as owners and operators of the Inn; it was not exclusively possessed by Indiana Insurance. In *Thompson,* the liability insurer took exclusive possession of the dog restraint cable, a highly relevant piece of evidence to the dog-bite plaintiff's claims against the dog owners and landlord, and thereafter lost the cable before it could be tested or examined. 704 N.E.2d at 135–36. This distinction alone is not per se dispositive, as *Wilmoth* declined to limit the duty to preserve evidence to instances when an insurer physically takes possession of certain evidence. *Wilmoth,*

893 N.E.2d at 1072. Nonetheless, the fact that Indiana Insurance did not take exclusive control of the scene or exclusive possession of the appliances that may have contributed to Feit's death, lessens the relationship between the insurer and the Estate and counsels against finding Indiana Insurance owed a duty to the Estate. *See Thompson,* 704 N.E.2d at 137 (discussing relationship between liability insurer and third-party claimant).

The Estate emphasizes the seriousness of the facts of this case to argue Indiana Insurance owed the Estate a duty. A fire had occurred at the Inn operated by the insured, the cause of the fire was unknown, and a guest of the Inn had died. In these circumstances, Indiana Insurance knew or should have known that litigation was likely. Also, Indiana Insurance's investigator and adjustor had seen the electrical appliances in the area of greatest fire damage, so they knew or should have known these items would be crucial evidence in the Estate's claims against the Patels. In light of these facts, the Estate argues the law should not "allow[ ] an insurer to avoid liability for negligence by its insured by the simple expedient of allowing evidence to be destroyed," and "public policy should not permit an insurer to further its financial interest to avoid potential liability on a claim against its insured by not preserving the very evidence that could establish such liability." Brief of Appellant at 5, 16.

We do not hold that third-party spoliation claims could never be available against a liability insurer where death or serious injury resulted on the insured's business premises. Yet, as the above discussion of Indiana cases illustrates, our courts recognize spoliation of evidence as an independent tort only in narrow circumstances where a relationship exists between the claimant and the third party sought to be held responsible for a failure to preserve

evidence. As stated in *Glotzbach*, the standard is whether there is an "independent tort, contract, agreement, or special relationship imposing a duty to the particular claimant." 854 N.E.2d at 339 (quotation omitted). We conclude that standard is not met here given the facts. There was no exclusive possession of the evidence by Indiana Insurance and no allegation of bad faith by the insurer. The only allegation is that Indiana Insurance failed to advise the Patels to preserve evidence, not that it affirmatively acted to destroy evidence to avoid or lessen its liability.

We further point out that since this court's *Thompson* decision in 1998, no Indiana appellate decision has expanded the availability of spoliation causes of action.[7] Rather, both the Indiana Supreme Court and this court have distinguished *Thompson,* and our supreme court has indicated that the balance of policy reasons weighs against expanding availability of the tort. *See Glotzbach,* 854 N.E.2d at 341; *Gribben,* 824 N.E.2d at 354–55. Even if other jurisdictions would recognize a duty and a cause of action under the facts of this case, we decline the Estate's invitation to do so because we are bound by our supreme court's assessment and balancing of public policy factors.

While we conclude the Estate has no spoliation cause of action against Indiana Insurance, the Estate is not necessarily without other remedies. For instance, in the Estate's ongoing action against the Patels, it may seek an adverse inference jury instruction or other sanctions if available. *See supra* note 6. While the record does not indicate the policy limits of Indiana Insurance's contract with the Patels, an adverse inference against the Pa-

tels as to spoliation indirectly works against Indiana Insurance to the extent the policy limits cover the damages that may be assessed. If the damages exceed the policy limits, our opinion does not preclude the Patels from seeking to impose liability against Indiana Insurance for its failure to advise them to preserve potentially relevant evidence.

### Conclusion

Because we conclude the Estate does not have a third-party cause of action against Indiana Insurance for spoliation of evidence, the trial court's grant of summary judgment to Indiana Insurance is affirmed.

Affirmed.

BAILEY, J., and CRONE, J., concur.

---

**7.** In *Howard Reg'l Health Sys. v. Gordon,* 925 N.E.2d 453 (Ind.Ct.App.2010), *trans. granted,* 940 N.E.2d 823 (Ind.2010), this court held that an independent tort of spoliation could be brought by a patient against the hospital that breached its statutory duty to preserve the patient's medical records. That holding was vacated on transfer, and our supreme court has not yet issued an opinion.